FILED
08-01-2024
Anna Maria Hodges
Clerk of Circuit Court
2024CV006252
Honorable Michael J.
Hanrahan-04
Branch 4

STATE OF WISCONSIN  :  CIRCUIT COURT  :  MILWAUKEE COUNTY

WHYTWAN VERSEY
2637 N. 9th Street
Milwaukee, WI 53206,

JACQUELINE WASHINGTON
441 S. Edison Ave.
South Bend, IN 46619,

   Plaintiffs,

v.

CASEY EBERT
Milwaukee Police Department
749 W. State Street
Milwaukee, WI 53233,

JUSTIN JOLLIFF
Milwaukee Police Department
749 W. State Street
Milwaukee, WI 53233,

ROBERT ROEMBKE
Milwaukee Police Department
749 W. State Street
Milwaukee, WI 53233,

ROLANDO FRANCO
Milwaukee Police Department
749 W. State Street
Milwaukee, WI 53233,

Case No.: _____

**COMPLAINT**

Person Injury – Other: 30107
Unclassified (Civil Rights): 30703

CITY OF MILWAUKEE
CITY CLERK'S OFFICE
2024 AUG 15 PM 2:05

OFFICE OF CITY ATTORNEY
16 AUG '24 AM 08:05

1

CITY OF MILWAUKEE
c/o Jim Owczarski, City Clerk
200 E. Wells Street, Room 205
Milwaukee, WI 53202

       Defendants.

---

NOW COMES the above-named plaintiffs, Whytwan Versey and Jacqueline Washington, by their attorneys, Gingras, Thomsen & Wachs, LLP, for their Complaint against the above-named defendants, allege and show to the Court as follows:

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights to be free from an unreasonable search and seizure as secured by the Fourth and Fourteenth Amendments of the United States Constitution.

## PARTIES

2. Plaintiff Whytwan Versey, (hereinafter "Mr. Versey") is an African American man and an adult resident of the State of Wisconsin, residing at 2637 North 9th Street, Milwaukee, WI 53206. At all times material hereto, Mr. Versey was entitled to all rights and privileges granted by the United States Constitution.

3. Plaintiff Jacqueline Washington, (hereinafter "Ms. Washington") is an adult African American woman, residing at 441 S. Edison Ave., South Bend, IN 46619. At all times material hereto, Ms. Washington was entitled to all rights and privileges granted by the United States Constitution.

4. Defendant Officer Casey Ebert (hereinafter "Officer Ebert") is a white male and an adult resident of the State of Wisconsin. Officer Ebert was a police officer with the Milwaukee Police Department (hereinafter "MPD") at all times relevant to this action and was acting under color of law

and within the scope of his employment with MPD or the City of Milwaukee at all times relevant hereto.

5. Defendant Sergeant Justin Jolliff (hereinafter "Sergeant Jolliff") is a white male and an adult resident of the State of Wisconsin. Sergeant Jolliff was a sergeant with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with MPD or the City of Milwaukee at all times relevant hereto.

6. Defendant Officer Robert Roembke (hereinafter "Officer Roembke") is an adult resident of the State of Wisconsin. Officer Roembke was a police officer with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with MPD or the City of Milwaukee at all times relevant hereto.

7. Defendant Sergeant Rolando Franco (hereinafter "Sergeant Franco") is an adult resident of the State of Wisconsin. Sergeant Franco was a sergeant with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with MPD or the City of Milwaukee at all times relevant hereto.

8. Defendant City of Milwaukee (hereinafter "Milwaukee"), with the offices of its executive at 200 E. Wells St., Milwaukee, WI 53202, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. Milwaukee established, operated, and maintained the MPD at all times material hereto; Milwaukee is ultimately responsible for the training, supervising, and discipline of MPD employees and the creation and implementation of its policies and procedures through its Chief of Police, and had ultimate control and authority over MPD and all Defendants, and pursuant to Wis. Stat. § 895.46 is obligated to indemnify all Defendants in this action.

## FACTS

9. On August 6, 2021, at approximately 1:45 a.m., Mr. Versey and Ms. Washington were asleep at their residence, located at 3555 N. 11th St., Milwaukee, WI 53206, along with Ms. Washington's nephew, Keyon Davis-Washington ("Mr. Davis-Washington").

10. On August 6, 2021, Officer Ebert responded to a gun-related call at North 12th Street and West Finn Place in Milwaukee, WI, just over one block from Mr. Versey and Ms. Washington's residence.

11. At approximately 1:38 a.m., after Officer Ebert arrived at North 12th Street and West Finn Place, he identified an individual matching the reported description.

12. Shortly after Officer Ebert exited the squad car, one of the suspects, described as a black male in blue jean shorts, a white shirt, and a ball cap with a black handgun, fled the scene on foot at approximately 1:40 a.m.

13. Officer Ebert pursued the fleeing suspect on foot. When the suspect jumped over a fence and ran between the yards of 3555 N. 11th Street (Mr. Versey and Ms. Washington's residence) and 3551 N 11th St., Officer Ebert ran alongside the fence and rounded the corner of 3555 N. 11th Street, at which point he lost sight of the suspect.

14. Even though Officer Ebert was unable to see the suspect, Officer Ebert allegedly heard a door shut and presumed that the suspect entered the residence located at 3555 N. 11th Street (Mr. Versey and Ms. Washington's residence).

15. Officer Ebert did not see the suspect enter the residence located at 3555 N. 11th Street.

16. Upon arriving at the entrance of 3555 N. 11th Street, Officer Ebert called for backup.

17. When Sergeant Jolliff arrived at the entrance of 3555 N. 11th Street, Officer Ebert informed him that he heard a door slam. However, Officer Ebert did not tell Sergeant Jolliff that he

saw the subject run into the residence at 3555 N. 11th Street, and Sergeant Jolliff did not ask any additional questions.

18. Officer Roembke arrived at 3555 N. 11th Street as Officer Ebert announced his presence at the front of Mr. Versey and Ms. Washington's door with reckless disregard for their constitutional rights..

19. At approximately 1:44 a.m., Sergeant Franco, the offsite sergeant, ordered the officers via radio communication to force entry into 3555 N. 11th Street once there were enough officers present and to start calling the individuals out of the residence.

20. Mr. Versey and Ms. Washington were asleep at the time the officers arrived at their residence, and as a result, they did not hear any attempts by the officers to announce their presence.

21. At approximately 1:48 a.m., Mr. Versey and Ms. Washington awoke to a loud bang and the shattering of glass. When they went downstairs, they were met with blinding lights and several officers pointing guns directly at them.

22. Officer Ebert had forced entry into Mr. Versey and Ms. Washington's residence by kicking in the door, at which time Officer Ebert, Officer Roembke, and Sergeant Jolliff entered the residence.

23. The Defendants demanded to know who was in the residence, to which Mr. Versey responded that it was just him, Ms. Washington, and her nephew, Mr. Davis-Washington, who was upstairs taking a shower at the time.

24. Ms. Washington explained to the officers that Mr. Davis-Washington was diabetic and was sick. Officer Ebert made verbal contact with Mr. Davis-Washington in the bathroom and ordered him to exit the house with just a towel on and without shoes – forcing him to walk backward over broken glass.

5

25. Even though the Defendants did not identify any of the occupants (Mr. Versey, Ms. Washington, and Mr. Davis-Washington) as the suspect, the Defendants detained them outside of the residence.

26. The Defendants began to conduct a search of Mr. Versey and Ms. Washington's residence to determine if an alleged suspect was inside.

27. Prior to conducting the search, Sergeant Jolliff notified the officers of a surveillance camera in Mr. Versey and Ms. Washington's kitchen.

28. Officer Roembke turned the camera around to face a wall, preventing it from capturing the Defendants' search of the residence.

29. The Defendants searched the entire residence twice. During the search, Officer Roembke and other Defendants searched in cabinets, lifted and searched underneath a mattress, and otherwise searched in areas that could not have reasonably harbored an alleged suspect.

30. After completing the search, the officers did not locate a suspect in Mr. Versey and Ms. Washington's residence, and the search of the residence did not reveal evidence that the suspect had entered the residence. Only then did any officer ask Officer Ebert if he ever saw the suspect run in the house. Officer Ebert stated that he did not know.

31. At approximately 2:13 a.m., the officers recovered a firearm in the backyard of 3551 N. 11th Street, the neighboring house.

32. Defendants' conduct deprived plaintiffs of their freedom and caused extreme emotional distress to Mr. Versey and Ms. Washington and damaged property, including their door, dead bolt, and mirror, among other damages.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS EBERT, ROEMBKE, FRANCO AND JOLLIFF – UNREASONABLE SEARCH AND SEIZURE

33. Plaintiffs reallege and incorporate by reference all preceding allegations.

34. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under the color of state law and within the scope of their employment to deprive Mr. Versey and Ms. Washington of their constitutional rights.

35. On August 6, 2021, Officer Ebert, Officer Roembke, and Sergeant Jolliff, at the direction of Sergeant Franco, under the color of law, unlawfully entered Plaintiffs' residence and seized the Plaintiffs. During the encounter, Defendants pointed loaded guns at Plaintiffs, detained the Plaintiffs, and deprived them of their freedom and residence, all against their will and without their consent.

36. Defendants did not have a search warrant for Plaintiffs' residence, nor did they have an arrest warrant for Plaintiffs or any other individual who resided at the residence, or any reasonable belief to enter the premises, detain the plaintiffs or search the premises.

37. Plaintiffs were not suspected of having committed any crime on August 6, 2021. Nor were Plaintiffs ever charged with having committed a crime pertaining to the subject incident.

38. Defendants did not see the alleged fleeing suspect ever enter Plaintiffs' residence and did not have probable cause to justify the warrantless entry or any other basis to enter the premises.

39. Moreover, the Defendants never had any basis that Mr. Versey and Ms. Washington's cabinets, drawers, or mattress were harboring an alleged fleeing suspect.

40. The Defendants' conduct constituted an unreasonable search and seizure in violation of Mr. Versey and Ms. Washington's Fourth Amendment rights as incorporated by the Fourteenth Amendment.

41. The described conduct on the part of the Defendants as set forth above was a cause of Mr. Versey and Ms. Washington's injuries, losses, and damages as set forth herein.

42. The Defendant, City of Milwaukee, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against an individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS ROEMBKE, FRANCO AND JOLLIFF – FAILURE TO INTERVENE

43. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

44. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under the color of state law and within the scope of their employment to deprive Mr. Versey and Ms. Washington of their constitutional rights.

45. Before the unlawful entry and search and seizure, Defendants Roembke, Franco and Jolliff had sufficient time and opportunity to intervene and confirm that the alleged suspect never entered the plaintiffs' residence and could have easily prevented the unlawful entry, detention and search and prevented all the losses and damages as set forth herein, but instead joined in all the unlawful conduct in reckless disregard of the plaintiffs' constitutional rights.

46. The described conduct on the part of the Defendants as set forth above was a cause of the Plaintiffs' injuries, losses, and damages as set forth herein.

47. The Defendant, City of Milwaukee, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against an individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

### THIRD CLAIM FOR RELIEF – PUNITIVE DAMAGES

48. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

8

49. The conduct described in this complaint of the individual Defendants was unlawful, extreme, malicious, outrageous, and /or intentional.

50. Such conduct was intended to cause Mr. Versey and Ms. Washington unnecessary and severe personal psychological and emotional injuries.

51. Such conduct on the part of the individual Defendants was a cause of the psychological and emotional injuries suffered by Mr. Versey and Ms. Washington.

52. At all times material hereto, the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference towards Mr. Versey and Ms. Washington, or in an intentional disregard of their rights, such as to subject each individual Defendant to punitive damages.

53. The Defendant City of Milwaukee is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against an individual employee Defendant in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

WHEREFORE, the Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a. Against Defendants Officer Ebert, Sergeant Jolliff, Sergeant Franco, and Officer Roembke in their individual capacities, for compensatory damages, for the violation of Mr. Versey's and Ms. Washington's rights, as set forth above, in an amount to be determined at a trial of this matter;

b. Against Defendants Officer Ebert, Sergeant Jolliff, Sergeant Franco, and Officer Roembke for punitive damages for the violation of Mr. Versey's and Ms. Washington's rights, as set forth above, in an amount to be determined at a trial of this matter;

9

c.  Against Defendant City of Milwaukee for its liability pursuant to Wis. Stat. § 895.46 to indemnify the individual Defendants in an amount to be determined at a trial of this matter;

d.  For all costs, disbursements and actual attorney's fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Dated at Milwaukee, Wisconsin, this 1st day of August, 2024

**GINGRAS, THOMSEN & WACHS, LLP**
Attorneys for Plaintiffs

Electronically signed by Attorney Mark L. Thomsen
Mark L. Thomsen
State Bar No.: 1018839
Isaac P. Huettl
State Bar No.: 1122828

**P.O. ADDRESS**
219 N. Milwaukee Street
Suite 520
Milwaukee, WI 53202
Telephone:  (414) 837-4167
Facsimile:  (414) 763-6413
Email:      mthomsen@gtwlawyers.com
            ihuettl@gtwlawyers.com